**IN THE UNITED STATES DISTRICT COURT**
**FOR NORTHERN INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **THOMAS DAVID SILICH,** | ) | **2:23CV29** |
|     **PLAINTIFF,** | ) | |
| **v.** | ) | |
| | ) | |
| **BRANDON OBERMILLER,** | ) | |
| **JAMES WESLEY RICHARDSON, III** | ) | |
| **JOSEPH D. CLEMMONS,** | ) | |
| **FRED PAUL WILLIAMS,** | ) | |
| **CITY OF LAKE STATION,INDIANA,** | ) | |
|     **DEFENDANTS.** | ) | |

**COMPLAINT FOR MONETARY AND EQUITABLE RELIEF**

NOW COMES Plaintiff, by his attorneys, Christopher Cooper (through the Law Office of Christopher Cooper, Inc.), Roy Dominguez of the Law Office of Roy Dominguez and the Law Office of Susan Severtson. Plaintiff avers state law causes of action along with violations of the First Amendment to the United States Constitution; 4th Amendment and 14th Amendment violations against all Defendants in their individual capacities.

**JURISDICTION & VENUE**

(1)   Jurisdiction of this court arises under 28 U.S.C. § 1331; 28 U.S.C. § 1332; and 42 U.S.C. § 1983 (and, for fees by way of §1988 as to all counts).  And there is pendant jurisdiction by way of 28 USC 1367 for the state actions of negligence, battery and false imprisonment.

(2)    Venue is proper under 28 U.S.C. § 1391(b)(1) and (2). Defendants are located in this District, and a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## PARTIES

 (3)    Plaintiff **THOMAS DAVID SILICH,**  is an adult who resides in Lake County, Indiana. He was harmed by Defendant in Lake County, at all times relevant.

(4)    Defendant **BRANDON OBERMILLER,** is an adult, sued in his individual capacities, and is believed to reside in Lake County, Indiana. He harmed Plaintiff in Lake County, at all times relevant.

(5)    Defendant **JAMES WESLEY RICHARDSON, II,** sued in his individual capacities, is an adult who resides in Lake County, Indiana. He harmed Plaintiff in Lake County, at all times relevant.

(6)     Defendant **FREDERICK "Fred" Paul WILLIAMS**, sued in his individual capacities, is an adult who resides in Lake County, Indiana. He harmed Plaintiff in Lake County, at all times relevant.

(7)    Defendant **JOSEPH "Joe" D. CLEMMONS**, sued in his individual capacities, is an adult who resides in Lake County, Indiana. He harmed Plaintiff in Lake County, at all times relevant.

2

(8)     Defendant **LAKE STATION, INDIANA**, is a municipality located at 1969 Central Ave Lake Station IN 46405. It is the employer of the individually named Defendants. It harmed by Plaintiff in Lake County, at all times relevant.

## FACTS

1.     Plaintiff was falsely arrested and falsely charged for political purposes in violation of his US Const. 1st Amendment rights.

2.     Plaintiff was unreasonably and illegally deprived of his US Constitutional civil rights by the Defendants.

3.     Plaintiff was unreasonably and illegally deprived of his US Constitutional rights when his liberty and property right were interfered with by the Defendants.

4.     On July 2021, Plaintiff was the Hobart Township Trustee.

5.     On July 20, 2021, during the daytime Plaintiff was driving a vehicle (a pick-up truck) starting at the Office of Hobart Township Board, located at 1421 W. 37th Ave., Hobart, Lake County, Indiana and continuing on the public roads to his residence of Plaintiff on Roche Street in Hobart.

6.     Lake Station Police Department Police Officer Brandon Obermiller claimed that Plaintiff was operating his vehicle at 40 mph where the speed limit was 35mph.

7.     James Richardson was Officer Obermiller's supervisor. Richardson held the position of Chief of the Lake Station Police Department.

8.      Fred Williams is and was a Lake Station city council member.

9.      Joseph Clemmons is and was a Board Member of the Hobart Township Board.

10.      On or about July 20, 2021, Hobart Township Board Member Joseph Clemmons along with Lake Station City Council Member and Hobart Township Board employee Fred Williams conspired to fabricate false claims against the Plaintiff to remove Plaintiff from office as the Hobart Township Trustee and to cause him public embarrassment.

11.      The two (Clemmons and William's), joined by Richardson engaged in telephone calls (among other contact) and discourse to cause the false arrest of Plaintiff. The first set of calls on or about July 20, 2021, and the second set of call shortly after the false arrest. The purpose of the calls was to ensure that Plaintiff was arrested and prosecuted so to disable Plaintiff from a successful re-election bid.

12.      On or about July 20, 2021, Lake Station City Council Member and Hobart Township Board employee Fred Williams and Hobart Township Board Member Joseph Clemmons engaged Lake Station City Police Chief James Richardson to assist in this endeavor.

13.      On or about July 20, 2021, Hobart Township employee Fred Williams contacted Chief Richardson of the Lake Station Police Department to send an officer to investigate the false claims.

14.     Lake Station Police Chief then contacted Lake Station Officer Brandon Obermiller and instructed him to follow and arrest the Plaintiff.

15.     Prior to July 20, 2021, Chief Richardson hired Obermiller and allowed him to act in the capacity of a police officer without a proper background check and training.

16.     On or about July 20, 2021, Officer Obermiler laid in wait for Plaintiff to leave his office at the Hobart Township Trustee building and followed him as he drove his vehicle to his home for lunch.

17.     Obermiller in conjunction with the above-referenced individuals claimed that he observed Plaintiff speeding approximately five (5) miles over the posted speed limit.

18.     Officer Obermiller did not use any authorized radar device to determine Plaintiff's speed but rather asserted that he was able to clock his speed while driving up a hill on Ridge Road toward Plaintiff's residence.

19.     Officer Obermiller perfected an illegal stop of the Plaintiff, without probable cause, and later placed Plaintiff under arrest in the driveway of Plaintiff's own home, at the direction of Lake Station Chief of Police Richardson.

20.     Plaintiff's vehicle was impermissibly searched and towed at the request of Chief Richardson, thereby incurring tow fees.

21.    Plaintiff was erroneously accused by Defendants of operating the motor vehicle while intoxicated.

22.    Plaintiff was forcibly taken to the hospital by Officer Obermiller and subjected to a blood draw.

23.    After his false arrest, Plaintiff, was forced to submit to an intrusive blood test, which he passed.

24.    Plaintiff was charged with criminal offenses, which after further investigation were dismissed by the Lake County Prosecutor's Office.

25.    The criminal charges against Plaintiff were dismissed and the following verbiage represents the Court's final order.

### *ORDER EXPUNGING CHEMICAL TEST REFUSAL*

*This matter having been set before the Honorable Judge Joshua Matejczyk, on the below indicated **date**, and the Court having found that the Defendant did not knowingly and/or willingly refuse to submit to a breathalyzer test, the Court does hereby Order the Bureau of Motor Vehicles to rescind the driver's license suspension for Defendant's **Refusal** to submit to said chemical test. The Court also Orders the defendant's chemical test **Refusal** in this cause expunged and removed from the defendant's driving record, instanter. The Court further Orders the Bureau of Motor Vehicles to immediately strike and expunge from its records any **Refusal or Suspension** entered as a result of the charge or cause number herein, and to reinstate the Defendant's driving privileges, INSTANTER.*

26.    Plaintiff timely served all parties with a Notice of Tort Claim.

27.    Despite the dismissal, Plaintiff was the subject of newspaper and other media articles which showed him in a false light (legal term). Such was embarrassing and humiliating especially since all was based on police

malfeasance and an effort to stall Plaintiff's re-election bid.  The false light was caused by the illegal and conspiratory conduct of the Defendants.  As a result, Plaintiff suffered "Stigma Plus" results and damages.

## COUNT I: VIOLATION OF THE FIRST AMENDMENT, 42 USC 1983 (DISCRIMINATION AND RETALIATION) (Applies to all Defendants)

(1)     Plaintiff repeats, re-alleges and incorporates by reference the allegations in all preceding paragraphs of this Complaint, especially the section entitled "Facts," with the same force and effect as if herein set forth. The facts section is to be read as Paragraph 1 of this count.

(2)     Plaintiff Silich engaged in protected speech; the Defendants' (in their individual capacities) retaliatory conduct adversely affected that speech and; there is a causal link exists between the conduct and the adverse effects.

(3)     All Defendants were acting under color of law.

(4)     Plaintiff was falsely arrested, falsely imprisoned, and battered (by a blood draw).

(5)     Plaintiff suffered such deprivations because of the intent of his rivals/ Defendants (esp., Fred Williams) to cause Plaintiff to lose his reelection bid for the  position he held as Hobart Trustee.

(6)     Plaintiff's advocacy (to include verbal pronunciations) for himself to maintain and retain the elected position of Hobart Township Trustee addressed matters of public concern and public interest.

(7)     Plaintiff's political speech was a significant and motivating factor in Defendant's material adverse actions against described in the facts section (supra.).

(8)     In violation of the 1st Amendment to the United States Constitution First Amendment, Defendants followed Plaintiff; stopped (traffic stop) Plaintiff;  conspired to arrest Plaintiff; arrested the Plaintiff pursuant to the conspiracy; falsely imprisoned the Plaintiff; subjected the Plaintiff to unreasonable blood draw; humiliated the Plaintiff; mentally traumatized the Plaintiff and stigmatized the him. All of this conduct was political retaliation to include because Plaintiff having exercised free speech as the United States Constitution permitted him to do.

(9)     Defendants' conduct was and is the proximate cause and substantial factor in causing Plaintiff's harm.

(10)    Plaintiff avers Stigma Plus damages.

(11)    Plaintiff suffered harm to include pain and suffering; loss of income; pain and suffering, humiliation; "stigma-plus";  and stress (garden variety).

**WHEREFORE**, and that there is sought, judgment against all Defendants jointly and severally for actual, general, special, compensatory damages in excess of  $500,000.00, plus punitive damages and that each Plaintiff further demands reinstatement as well as judgment against

Defendants for the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

### COUNT II: VIOLATION OF THE FOURTH & FOURTEENTH AMENDMENTS, 42 USC 1983
### (Applies to all Defendants)

(1)     Plaintiff repeats, re-alleges and incorporates by reference the allegations in all preceding paragraphs of this Complaint, especially the section entitled "Facts," with the same force and effect as if herein set forth. The facts section is to be read as Paragraph 1 of this count.

(2)     All Defendants were acting under color of law.

(3)     Plaintiff was seized and imprisoned in violation of the US Constitution.

(4)     The seizure (inclusive of imprisonment and compelled blood draw) was unreasonable and constitutionally illegal.

(5)     Plaintiff suffered such deprivations because of the intent of his rivals/Defendants (esp., Fred Williams) to cause Plaintiff to lose his reelection bid for the  position he held as Hobart Trustee.

(6)     Plaintiff's advocacy (to include verbal pronunciations) for himself to maintain and retain the elected position addressed matters of public concern and public interest.

(7)     Plaintiff's political speech was a significant and motivating factor in Defendants' material adverse actions against described in the facts section (supra.).

(8)     In violation of the 1st Amendment, Defendants followed Plaintiff; stopped (traffic stop) Plaintiff;   conspired to arrest Plaintiff; arrested the Plaintiff pursuant to the conspiracy; falsely imprisoned the Plaintiff; subjected the Plaintiff to unreasonable blood draw; humiliated the Plaintiff; mentally traumatized the Plaintiff and stigmatized the Plaintiff. All of this conduct as political retaliation to include because Plaintiff's exercised free speech as the United States Constitution permitted him to do so.

(9)     Defendants' conduct was and is the proximate cause and substantial factor in causing Plaintiff's harm.

(10)    Plaintiff avers Stigma Plus damages.

(11)    Plaintiff suffered harm to include pain and suffering; loss of income;  humiliation; "stigma-plus"; and stress (garden variety).

**WHEREFORE**, and that there is sought, judgment against all Defendants jointly and severally for actual, general, special, compensatory damages in excess of  $500,000.00, plus punitive damages and that each Plaintiff further demands reinstatement as well as judgment against Defendants for the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

### COUNT III: 42 USC 1985 CONSPIRACY VIOLATION OF THE FIRST AMENDMENT
### (Applies to all Defendants)

(1)     Plaintiff repeats, re-alleges and incorporates by reference the allegations in all preceding paragraphs of this Complaint, especially the section entitled "Facts," with the same force and effect as if herein set forth. The facts section is to be read as Paragraph 1 of this count.

(2)     All Defendants were acting under color of law.

(3)     All Defendants engaged in a conspiracy to interfere with Plaintiff's civil rights (see Facts section) when they orchestrated the Plaintiff's arrest and seizure and in continuing with the process to attempt to cause Plaintiff to receive a criminal conviction.

(4)     Plaintiff suffered such deprivations because of the intent of his rivals (esp., Fred Williams) to cause Plaintiff to lose his reelection bid for the position he held as Hobart Trustee.

(5)     Plaintiff's advocacy (to include verbal pronunciations) for himself to maintain and retain the elected position of Trustee addressed matters of public concern and public interest.

(6)     Plaintiffs' political speech was a significant and motivating factor in Defendant's material adverse actions against described in the facts section (supra.).

(7)     In violation of the 1st Amendment, Defendants followed Plaintiff; stopped (traffic stop) Plaintiff;  conspired to arrest Plaintiff; arrested the

11

Plaintiff pursuant to the conspiracy; falsely imprisoned the Plaintiff; subjected the Plaintiff to unreasonable blood draw; humiliated the Plaintiff; mentally traumatized the Plaintiff and stigmatized the Plaintiff. All of this conduct as political retaliation to include because Plaintiff's exercised free speech as the United States Constitution permitted him to do so.

(8)    Defendants' conduct was and is the proximate cause and substantial factor in causing Plaintiff's harm.

(9)    Plaintiff suffered harm to include pain and suffering; loss of income; pain and suffering, humiliation; "stigma-plus";  and stress (garden variety).

WHEREFORE, and that there is sought, judgment against all Defendants jointly and severally for actual, general, special, compensatory damages in excess of  $500,000.00, plus punitive damages and that each Plaintiff further demands reinstatement as well as judgment against Defendants for the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

### COUNT IV:  42 USC 1983: FAILURE TO SUPERVISE AND TRAIN DEFENDANT OBERMILLER & VIOLATION BY RETAINING OFFICER OBERMILLER (Applies Defendant Richardson)

(1)    Plaintiff repeats, re-alleges and incorporates by reference the allegations in all preceding paragraphs of this Complaint, especially the section

12

entitled "Facts," with the same force and effect as if herein set forth. The facts section is to be read as Paragraph 1 of this count.

(2)     Defendant Richardson was acting under color of law.

(3)     Defendant Richardson chief of police for Lake Station, Indiana, and Defendant **OBERMILLER**'S supervisor knew or should have known that Defendant **OBERMILLER** was unfit and unqualified to practice as  police officer.

(4)     Richardson knew that **OBERMILLER** exhibited a pattern of conduct not conducive to practicing as a police officer.

(5)     Richardson knew that **OBERMILLER** had been terminated by the Indiana State Police.

(6)     Defendant Richardson not having supervised **OBERMILLER**, caused Plaintiff to have suffered grievous injuries and violation of his Constitutional rights.

(7)     At all material times relevant to this Complaint, Defendant **OBERMILLER** was acting under the direction and control of Defendant Richardson.

(8)     Acting under the color of law and pursuant to policy and custom, and Defendant Richardson knowingly, recklessly and/or with deliberate indifference failed to instruct, supervise, control and/or discipline **OBERMILLER** and to train **OBERMILLER** in his duty to refrain from false arrests, inter alia.

(9)     Plaintiff was deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States, by Defendant Richardson failing to supervise Defendant **OBERMILLER** and to provide proper training to **OBERMILLER** , in violation of 42 U.S.C. § 1983 and related provisions of federal law and the United States Constitution.

(10)     Defendant Richardson failed to supervise and adequately train **OBERMILLER**  as to violations of the US Constitution; the use of force paradigm and the prohibition against police officers making false arrests and using one's office to silence a political opponent.

(11)     That Defendant Richardson had knowledge of the wrongs to be done by  **OBERMILLER** because of his respective leadership position, as chief of police.

(12)     Had Defendant Richardson diligently exercised his duty to instruct, supervise, control and/or discipline Officers on a continuous basis, **Silich**  would not have suffered the harm he endured.

(13)     That the Defendant Richardson approved or ratified the unlawful, deliberate, malicious, reckless and wanton conduct of the Defendant heretofore described.

(14)     That Defendant Richardson failed to take steps to cause the board which hires Lake Station police officers to deny employment to **OBERMILLER.**

(15)   That Defendant Richardson failed to take steps to cause the board which hires and fires Lake Station police officers to terminate **OBERMILLER'S** employment.

(16)   Defendant Richardson was deposed in the Silich criminal matter in which Silich was charged based on actions of the Defendants and for which the instant lawsuit is concerned.

(17)   Although Richardson does not make the ultimate to decision to hire or fire a police officer, he makes recommendations and provides a list of candidates to the Lake Station Police Merit Board.

(18)   Obermiller was terminated by the Capital Police, a division of the Indiana State Police.

(19)   Richardson had and has a duty to notify the administrative agency (in this case the Lake Station Police Merit Board) that hires and fires officers, when he (the chief) learned that an officer lied on his application and failed to disclose information.

(20)   On his application to Lake Station, Obermiller lied when he stated that he resigned.

(21)   Obermiller had been fired.

(22)   Richardson knew or had reason to know that Obermiller lied on his application to Lake Station when he said he resigned from the Indiana Capital Police when in fact he had been terminated.

(23)   At a time when Obermiller was an adult and prior to his being hired by Lake Station, Obermiller operated his motor vehicle after, by his own admission, he had been drinking alcohol.

(24)   Obermiller crashed his automobile, causing an accident with injuries.

> Q. Okay. So are you aware that Obermiller was injured
> 2 in that automobile accident --
> 3 A. No.
> 4 Q. -- where he had been drinking?
> 5 A. No.
> 6 Q. Would that have been important to you?
> 7 A. Sure.
> 8 Q. Yeah. Do you think you should have found that out
> 9 before you hired him as a reserve officer?
> 10 A. Sure.

(25)   The car accident was publicly available information, readily available to Defendant Richardson prior to Obermiller's recommendation and insistence that Lake Station hire Obermiller.

(26)   In fact, in 2020, when the Lake Station Police Merit Board, at one point, was not about to hire Obermiller in, Defendant Richardson complained and personally intervened to make sure that Obermiller was hired. The following answers were given by Defendant Richardson:

> Q. No. Before it goes to the merit board. Within the
> 13 PD --
> 14 A. Yes.
> 15 Q. -- the buck starts with you?
> 16 A. Correct.
> 17 Q. You're the police chief?
> 18 A. Correct.
> 19 Q. That's why you're the chief?

16

20 A. Correct. (Richardson at p40)
24 A. Okay.
25 Q. -- was Obermiller's name submitted?


1 A. Yes.
2 Q. Okay. And how many people were on that list?
3 A. How --
4 Q. Approximately, five, ten --
5 A. Hold on. Six.
6 Q. Okay. And for two vacancies?
7 A. Correct.
8 Q. And who did they select?
9 A. Kyle Olsen [phonetic] and Kersha Drain [phonetic].
**10 Q. Okay. And did you inquire as to why Obermiller was**
**11 not selected?**
**12 A. Yes.**
13 Q. Okay. That would be normal. You know him, right?
14 A. Right. It wasn't that. It was a different reason
15 that I asked them about him.
16 Q. Okay.
17 A. Not because of employment
18 Q. Okay.
19 A. Because of something else.
20 Q. Okay. Tell us about that.
21 A. They didn't even put him on the list, and I asked
22 why. They said because he didn't sign his
23 application.
24 Q. Okay.
25 A. Is what they told me.  (Richardson at p41)


(27)    Richardson did testify under oath that at a time when Obermiller

was an adult he knew Obermiller's driver's license had been suspended.

(28)    Public records show that Richardson should have known

Obermiller's driver's license was suspended for three months for "false

license plates" and no insurance.


From PAGE 45 OF RICHARDSON'S deposition:

17

     Q. Okay. So in this investigation that you guys
4 conducted at Lake Station Police Department, you
5 knew that Obermiller's license had been suspended
6 by the Bureau of Motor Vehicles?
7 A. I do, yes. Years ago, yes.
8 Q. Yeah. You're aware of that?
9 A. Correct.
10 Q. And you're aware why it was suspended, correct?
11 A. Yes.
12 Q. Tell us what you --
13 A. False plates.
14 Q. Right.
15 A. That was dropped.
16 Q. And that he had no insurance?
17 A. Correct.

(29)    Defendant Obermiller had worked for multiple police agencies in

a six year period. Richardson stated the following at his deposition:

     Q. Yeah. Don't you think it's strange -- your
24 opinion, someone within a six-year period is with
25 four or five different police departments and never
(Richardson at Page 30)
1 gets hired as full-time; except the one that he
2 did, he gets fired before you guys hired him as a
3 reserve officer?
4 A. Sure.
5 Q. Sure, right? And so wouldn't that be a red flag
6 for you to, we better check this out?
7 A. Sure.
(Richardson at Page 31)

(30)    Defendant Richardson conduct (along with the conduct of the

other Defendants) was and is the proximate cause and substantial factor in

causing Plaintiff's harm.

18

(31)   Plaintiff suffered harm to include pain and suffering; loss of income and monies (paid to defend himself in criminal court); pain and suffering, humiliation; "stigma-plus"; and stress (garden variety).

**WHEREFORE**, and that there is sought, judgment against all Defendants jointly and severally for actual, general, special, compensatory damages in excess of $500,000.00, plus punitive damages and that each Plaintiff further demands reinstatement as well as judgment against Defendants for the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

### COUNT V: 42: NEGLIGENCE (INDIANA LAW) WHERE LAKE STATION HIRED DEFENDANT OBERMILLER AND FAILED TO SUPERVISE AND TRAIN DEFENDANT OBERMILLER & VIOLATION BY RETAINING OFFICER OBERMILLER (Applies Defendant LAKE STATION)

(1)   Plaintiff repeats, re-alleges and incorporates by reference the allegations in all preceding paragraphs of this Complaint, especially the section entitled "Facts," with the same force and effect as if herein set forth. The facts section is to be read as Paragraph 1 of this count.

(2)   Lake Station had a duty to hire as police officers, persons fit to practice as police officer.  Lake Station breached that duty when it hired Obermiller.

(3)    Defendant Lake Station knew or should have known that Defendant **OBERMILLER** was unfit and unqualified to practice as police officer.  It had a duty know.  Lake Station breached that duty if it did not know.

(4)    Prior to hiring OBERMILLER, Defendant Lake Station knew that **OBERMILLER** exhibited a pattern of conduct not conducive to practicing as a police officer. Yet Lake Station hired him anyway.

(5)    Defendant Lake Station knew or should have known that **OBERMILLER**  had been terminated by the Indiana State Police.

(6)    Defendant Lake Station not having conducted a thorough background check of Obermiller breached its duty to itself and the public.

(7)    Defendant Lake Station not having availed itself of public information in deciding whether or not  to hire Obermiller, breached its duty to itself and the public.

(8)    Defendant Lake Station's lack of supervision of **OBERMILLER**, caused Plaintiff to have suffered grievous injuries and violations of his Constitutional rights.

(9)    At all material times relevant to this Complaint, Defendant **OBERMILLER** was acting under the direction and control of Defendant Lake Station and its police chief (Richardson).

(10)    Had Defendant Lake Station diligently exercised his duty to instruct, supervise, control and/or discipline Officers on a continuous basis, **Silich** would not have suffered the harm he endured.

(11)   That the Defendant Lake Station approved or ratified the unlawful, deliberate, malicious, reckless and wanton conduct of the Defendant heretofore described.

(12)   That Defendant Lake Station failed to take steps to cause the board which hires Lake Station police officers to deny employment to **OBERMILLER.**

(13)   Plaintiff suffered harm to include pain and suffering; loss of income and monies (paid to defend himself in criminal court); pain and suffering, humiliation; "stigma-plus"; and stress (garden variety).

**WHEREFORE**, and that there is sought, judgment against all Defendants jointly and severally for actual, general, special, compensatory damages in excess of $500,000.00, plus punitive damages and that each Plaintiff further demands reinstatement as well as judgment against Defendants for the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

### **COUNT VI:  INTENTIONAL TORTS: BATTERY, ASSAULT, & FALSE IMPRISONMENT (INDIANA LAW)  (APPLIES TO ALL DEFENDANTS)**

(1)   Plaintiff repeats, re-alleges and incorporates by reference the allegations in all preceding paragraphs of this Complaint, especially the section entitled "Facts," with the same force and effect as if herein set forth. The facts section is to be read as Paragraph 1 of this count.

(2)   Without consent. Defendants did:

     a.  Assault Plaintiff

     b.  Batter Plaintiff; and

     c.  Falsely Imprison Plaintiff

(3)    Facts section incorporated herein.

(4)    Defendants were the proximate cause and substantial factor in causing Plaintiff's harm.

(5)   Plaintiff suffered harm to include pain and suffering; loss of income and monies (paid to defend himself in criminal court); pain and suffering, humiliation; "stigma-plus"; and stress (garden variety).

**WHEREFORE**, and that there is sought, judgment against all Defendants jointly and severally for actual, general, special, compensatory damages in excess of $500,000.00, plus punitive damages and that each Plaintiff further demands reinstatement as well as judgment against Defendants for the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT VII:  TRESPASS TO PROPERTY\REAL ESTATE (INDIANA LAW) (APPLIES TO ALL DEFENDANT OBERMILLER)

(1)    Plaintiff repeats, re-alleges and incorporates by reference the allegations in all preceding paragraphs of this Complaint, especially the section

entitled "Facts," with the same force and effect as if herein set forth. The facts section is to be read as Paragraph 1 of this count.

(2)    Without consent. Defendant Obermiller did trespass on the private property of the Plaintiff.

(3)    Plaintiff owns the property upon which Obermiller came upon and seized the Plaintiff.

(4)    Facts section incorporated herein.

(5)    Defendants were the proximate cause and substantial factor in causing Plaintiff's harm.

(6)    Plaintiff suffered harm to include pain and suffering; loss of income and monies (paid to defend himself in criminal court); pain and suffering, humiliation; "stigma-plus"; and stress (garden variety).

**WHEREFORE**, and that there is sought, judgment against all Defendants jointly and severally for actual, general, special, compensatory damages in excess of  $500,000.00, plus punitive damages and that each Plaintiff further demands reinstatement as well as judgment against Defendants for the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.


### COUNT VIII:  STIGMA-PLUS
### (APPLIES TO ALL DEFENDANTS)

(1)    Plaintiff repeats, re-alleges and incorporates by reference the allegations in all preceding paragraphs of this Complaint, especially the section

23

entitled "Facts," with the same force and effect as if herein set forth. The facts section is to be read as Paragraph 1 of this count.

(2)     There was stigmatizing information uttered and published by Defendants as to Plaintiff.

(3)     Plaintiff's "good name, reputation, honor and integrity [were] called into question in a manner that makes it virtually impossible" for the Plaintiff to be re-elected to office and or to be hired for a job for which an arrest is an impediment to employment.

(4)     The level of stigma caused a "tangible loss of other  opportunities" as well as having of "blacklisting" the Plaintiff from comparable jobs.

(5)     There was a deprivation of due process.

(6)     There was dissemination of harmful material.

(7)     There was a deprivation of election liberty, occupational liberty, social liberty, and earnings liberty.

(8)     Plaintiff's liberty and social relationships were interfered with since Defendants made him out to be a drunkard and drug addict.

(9)     There was, by the Defendants, the utterance and writing of statements sufficiently derogatory to injure Plaintiff's reputation, that were capable of being proven false, and that Plaintiff knows (knew) that the statements by Defendants' to have been false, and that there was a material state-imposed burden and state-imposed alteration of the Plaintiff's Silich's status or rights."

(10)   Defendants did produce police reports and probable cause affidavit with stigma plus statements when Defendants falsely accused Plaintiff of driving intoxicated, inter alia, on July 20, 2021.

(11)   Defendants did publish such statements in police reports and in court filings.

(12)   This was disclosure of damaging information which was   (1) compelled, (2) certain, and (3) not self-published.

(13)   Defendants' published false statements which were reproduced and published in newspapers (e.g., Trustee charged with OWI faces new allegations of election law violations (nwitimes.com)).

(14)   Plaintiff suffered extreme embarrassment as to the false charges and allegations of the Defendants.

(15)   Defendants were the proximate cause and substantial factor in causing Plaintiff's harm.

(16)   Plaintiff suffered harm to include pain and suffering; loss of income and monies (paid to defend himself in criminal court); pain and suffering, humiliation; "stigma-plus"; and stress (garden variety).

**WHEREFORE**, and that there is sought, judgment against all Defendants jointly and severally for actual, general, special, compensatory damages in excess of  $500,000.00, plus punitive damages and that each Plaintiff further demands reinstatement as well as judgment against

Defendants for the costs of this action, including attorney's fees, and such

other relief deemed to be just and equitable.

**\*Plaintiffs hereby make a demand for a Jury.**

DATED:  1-23-2023
Respectfully Submitted,
s\Christopher Cooper, ESQ., One of Plaintiff's Attorneys
Law Office of Christopher Cooper, INC.
426 N. Broad Street, Griffith, IN 46319
Tel: 219 228 4396; 312 473 2968; FAX: 866 334 7458
E-Mail: cooperlaw3234@gmail.com

Roy Dominguez, One of Plaintiff's Attorneys
Law Office of Roy Dominguez
7895 BROADWAY Ave Ste #R, Merrillville, IN 46410
 +1 219-769-6213 roy@dominguezlawyer.com

Susan M. Severtson, One of Plaintiff's Attorney
7895 Broadway Ste R,  Merrillville, IN 46410
+1 219-769-8113 susan@severtsonlaw.com