UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| THOMAS DAVID SILICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  2:23CV29-PPS/JEM |
| | ) |
| BRANDON OBERMILLER, | ) |
| JAMES WESLEY RICHARDSON, III, | ) |
| JOSEPH D. CLEMMONS, | ) |
| FRED PAUL WILLIAMS, and | ) |
| CITY OF LAKE STATION, INDIANA, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Indiana is one of a number of states that divide counties into townships.  A township trustee, elected by the voters of each township, serves as the township executive.  Ind. Code §36-6-4-2.  Among other duties, the township trustee is responsible for administering township assistance to poor residents of the township, and maintaining township parks and community centers.[1]  On July 20, 2021, Thomas Silich was the Hobart Township Trustee.  He brings this lawsuit alleging that his constitutional rights were violated and various torts were committed against him in connection with his arrest on that date by a Lake Station police officer, Brandon Obermiller.  Silich contends that Lake Station Police Chief James Richardson, III, Hobart Township Board member Joseph Clemmons, and Lake Station city council member Fred Williams "conspired to fabricate false claims against [Silich] to remove [him] from

---

[1] *See* https://www.in.gov/sboa/files/TWPCH-02-2021.pdf.

office as the Hobart Township Trustee and to cause him public embarrassment."  [DE 1 at ¶10.]

On the date in question, Officer Obermiller allegedly "laid in wait" to see Silich leave the Hobart Township Trustee office to head home for lunch, then stopped Silich for speeding (curiously, in the driveway of his own home) and arrested Silich for operating the motor vehicle while intoxicated.  [DE 1 at ¶¶16-21.]  All the charges were later dismissed by the Lake County Prosecutor's Office, and a Lake County court ordered the Bureau of Motor Vehicles to rescind the suspension of Silich's driver's license and to expunge from its records any erroneous reference to Silich knowingly or willingly refusing to submit to a breathalyzer test.  [DE 1 at ¶¶24, 25.]

All the defendants have filed motions to dismiss challenging the various causes of action Silich alleges.  One motion is filed by the City of Lake Station, Police Chief Richardson, and police officer Obermiller.  I will refer to them collectively as the Lake Station defendants.  The other motion is filed by defendant Clemmons, a member of the township board, and defendant Williams, a city council member and an employee of the township board.  I will refer to those two as the Hobart Township defendants.

<u>**Motion to Dismiss Standards**</u>

A motion under Fed.R.Civ.P. 12(b)(6) challenges the sufficiency of the complaint "to state a claim upon which relief can be granted."  The Supreme Court interpreted the Rule 12(b)(6) pleading standard in  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).  Ruling on a motion under Rule 12(b)(6), I must

accept the truth of the pleading's well-pleaded allegations, and draw all inferences in the light most favorable to the plaintiff.  *Killingsworth v. HSBC Bank*, 5507 F.3d 614, 618 (7th Cir. 2007).  The Rule 12(b)(6) standard requires "a claim to relief that is plausible on its face," which in turn requires factual allegations sufficient to permit a reasonable inference that the defendant is liable for the misconduct alleged.  *Twombly*, 550 U.S. at 556.

The Seventh Circuit has described *Twombly* as establishing "two easy-to-clear hurdles," namely that (1) the complaint describe the claim in sufficient detail to give the defendant fair notice of the claim and the basis for it, and (2) the allegations plausibly suggest that the plaintiff has a right to relief.  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008), quoting *Equal Employment Opportunity Commission v. Concentra Health Services, Inc.,* 496 F.3d 773, 776 (7th Cir. 2007).  "Plausibility" in this context does not empower the court to consider which party's story should be believed, but only that "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together."  *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

The Seventh Circuit's general rule is that after a dismissal under Rule 12(b)(6), a plaintiff is given at least one opportunity to amend the pleading.  *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015).  Unless "it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss."  *Id.* (emphasis in original).

### Count I – First Amendment

To prevail on his First Amendment retaliation claim under 42 U.S.C. §1983, Silich "must prove that (1) he engaged in constitutionally protected speech; (2) the defendants, as public officials, engaged in adverse conduct against him; and (3) the defendants were motivated, at least in part, by his protected speech." *Bivens v. Trent*, 591 F.3d 555, 559 (7ᵗʰ Cir. 2010). Silich's says he "engaged in protected speech" and the defendants engaged in retaliatory conduct, with the intent "to cause Plaintiff to lose his reelection bid for the position he held as Hobart Trustee." [DE 1 at 7, ¶¶2, 5.]

The Lake Station defendants argue that the complaint "pleads no facts that allege that Defendants Richardson and Obermiller had any unlawful motivation to engage in the facts attributed to them by the Complaint." [DE 17 at 4.] The Hobart Township defendants make a similar argument challenging Count I. [DE 24 at 5.] Count I alleges that Silich's "advocacy (to include verbal pronunciations) for himself to maintain and retain the elected position of Hobart Township Trustee addressed matters of public concern and public interest." [DE 1 at 7, ¶6.] Further, Count I alleges that "Plaintiff's political speech was a significant and motivating factor in Defendants' material adverse actions against [Silich]." [*Id.* at 8, ¶7.] In short, what Silich claims is that the defendants (all of them) wanted him gone; and so they concocted a plan to have him arrested under specious circumstances. Their actions were therefore done in retaliation for Silich's political speech and with the aim of ending Silich's tenure as township trustee.

The Lake Station defendants cite the Seventh Circuit's holding that "[t]he First Amendment does not in terms confer a right to run for public office, and this court has held that it does not do so by implication either." *Bart v. Telford*, 677 F.2d 622, 624 (7th Cir. 1982). Similarly, the Hobart Township defendants argue that an individual's interest in running for office, by itself, does not enjoy constitutional protection. [DE 24 at 5.] But *Bart* cites an earlier decision, *Newcomb v. Brennan*, 558 F.2d 825, 828 (7th Cir. 1977), in which retaliation against the plaintiff "because his superiors opposed his candidacy for political reasons...was held to raise a First Amendment issue." *Bart*, 677 F.2d at 624, citing *Newcomb*, 558 F.2d at 829.

The defendants' argument disregards the distinction observed in *Newcomb*, finding no First Amendment right to seek public office generally, but recognizing First Amendment protections in "a case where the plaintiff's candidacy was burdened because a state official wished to discourage that candidacy in particular," so as to discourage the candidate's political views. *Newcomb*, 558 F.2d at 829. The distinction, and the *Newcomb* decision, are still being observed by other federal courts. *See*, *e.g.*, *Spencer v. City of Hendersonville*, 487 F.Supp.3d 661, 685 (M.D.Tenn. 2020). Drawing all inferences from the complaint in Silich's favor, his allegations are that the defendants acted together to retaliate against him for his speech in an effort to impair his efforts to remain the Hobart Township Trustee. The defendants' argument that there is no right to be a candidate does not demonstrate that Count I should be dismissed for failure to

5

state a First Amendment claim, and defendants otherwise fail to demonstrate that Silich

has not stated a claim for First Amendment retaliation.

## Count II – Fourth & Fourteenth Amendments

Silich alleges in Count II that he was "seized and imprisoned" in violation of the

U.S. Constitution. [DE 1 at 9, ¶3.]  Although the title of Count II indicates that it asserts

the violation of Silich's rights under the Fourth and Fourteenth Amendments, it

contains references to political speech and the First Amendment.  [DE 1 at 9, ¶3; 10, ¶¶7,

8.]  I will nonetheless interpret Count II as focusing on the issue of unlawful seizure

under the Fourth Amendment, which Silich confirms is a correct reading of Count II.

[DE 25 at 2.]  The alleged unlawful seizure includes the traffic stop, Silich's arrest, his

false imprisonment, and an unreasonable blood draw.  [DE 1 at 10, ¶8.]  The Lake

Station defendants do not challenge Count II in their motion to dismiss.

The Hobart Township defendants argue that Count II "fails to state a claim of

false arrest against Defendants Clemmons and Williams."  [DE 24 at 7.]  They cite

*Odorizzi v. A.O. Smith Corp.*, 452 F.2d 229, 232 (7th Cir. 1971), for the proposition that

"giving information to police is insufficient to constitute participation in an arrest."  [DE

24 at 7.]  Their contention is that the complaint alleges only that "Clemmons and

Williams provid[ed] information to Chief Richardson and request[ed] that the Lake

Station Police Department *investigate* Plaintiff."  [*Id.* (emphasis in original).]

This is an overly narrow reading of Silich's relevant contentions.  The complaint

alleges that Clemmons and Williams "conspired to fabricate false claims against the

Plaintiff" and that they, joined by Chief Richardson, "engaged in telephone calls (among other contact) and discourse to cause the false arrest of Plaintiff." [DE 1 at 4, ¶¶10, 11.] Somewhat repetitively, the complaint goes on to aver that the Hobart Township defendants communicated with Chief Richardson with a purpose "to ensure that Plaintiff was arrested and prosecuted so as to disable Plaintiff from a successful re-election bid," and that they "engaged" Chief Richardson "to assist in this endeavor." [*Id*. at ¶¶11, 12.] The conduct the complaint alleges is not the innocent provision of information to the police as was involved in *Odorizzi*, a case incidentally not about a constitutional violation, but an Illinois tort.

Forced to acknowledge these broader allegations by Silich, the Hobart Township defendants argue in their reply that Silich relies on a conspiracy concept that is not adequately pled. [DE 31 at 7.] This argument in relation to Count II is impermissibly raised for the first time in the reply. In any event, I don't find the argument persuasive. Silich alleges the when, what, how and why of Williams' and Clemmons' actions to cause Silich's arrest on the basis of knowingly false claims. The allegations are significantly detailed to give the defendants fair notice of the nature of the claim against them and to plausibly support the ground for relief. This meets the standard set out by *Goodman v. Clark*, 2013 WL 2345914, at *3 (N.D.Ind. July 8, 2013), the case the defendants principally rely on—requiring an express or implied agreement to deprive Silich of his Fourth Amendment rights, and an actual deprivation of those rights arising

from overt acts in furtherance of that agreement.  The Hobart Township defendants do not demonstrate a basis for dismissal of Count II.

### Count III – Conspiracy Under 42 U.S.C. §1985

Silich's complaint purports to assert a conspiracy to interfere with his civil rights in violation of 42 U.S.C. §1985.  All the defendants seek dismissal of this claim, pointing out that §1985(1) applies only to conspiracies to unlawfully impede a federal officer in the discharge of his official duties.  [DE 17 at 5-6; DE 24 at 7-8.]  In response to both motions, Silich seeks the voluntary dismissal of Count III as to all defendants, [DE 20 at ¶1; DE 25 at ¶3], which of course will be granted.

### Count IV – Chief Richardson's Supervision, Training and Retention of Officer Obermiller

In Count IV, Silich brings a claim against Chief Richardson under 42 U.S.C. §1983 for his failure to train and to supervise Officer Obermiller, and for retaining Officer Obermiller on the police force.  To hold a municipality liable under §1983 for inadequate training or supervision requires proof of "deliberate indifference," meaning "(1) failure to provide adequate training in light of foreseeable consequences; or (2) failure to act in response to repeated complaints of constitutional violations by its officers."  *Sornberger v. City of Knoxville, Ill*, 434 F.3d 1006, 1029-30 (7th Cir. 2006).  *See also City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  Silich sues Chief Richardson in his individual capacity.  [DE 1 at 2.] To be personally liable for a constitutional violation, a supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see."  *Matthews v. City of East St. Louis*, 675

8

F.3d 703, 708 (7th Cir. 2012), quoted in *Kemp v. Fulton County*, 27 F.4th 491, 498 (7th Cir. 2022).

Richardson's liability for Obermiller's supervision, training or retention requires more than a showing of negligence, but proof that Richardson "acted purposefully, knowingly, or with reckless disregard for the consequences" of inadequately supervising, training or retaining Obermiller. *Kemp*, 27 F.4th at 498. "In essence, the defendant must have actual or constructive notice of a problem." *Miranda v. County of Lake*, 900 F.3d 335, 345 (7th Cir. 2018). "Supervisors may be liable under §1983 for failure to train, but the circumstances are extremely limited....[T]he plaintiff must show that the defendant knew that his failure to train was likely to lead to constitutional violations." *Ghashiyah v. Frank*, No. 07-C-308-C, 2007 WL 55177455, at *2 (W.D.Wisc. August 1, 2007) (citing *Kitzman-Kelley v. Warner*, 203 F.3d 454, 459 (7th Cir. 2000), and *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)).

Richardson argues that the complaint's recitation of negative information about Obermiller, even if known to Richardson, does not support a failure to train or supervise claim because the allegations don't indicate that Richardson "had any notice of constitutional violations previously engaged in by Defendant Obermiller" and could not establish that Richardson should have reasonably foreseen the sort of wrongdoing Silich alleges against Obermiller.  [DE 17 at 7-8.]  Count IV alleges that Richardson knew that Obermiller had been terminated by the Indiana State Police (but not why), that Richardson knew or had reason to know that Obermiller lied on his application to Lake

Station by claiming that he'd resigned from the State Police when he had actually been fired, that Obermiller had caused a car accident while driving under the influence of alcohol and his driver's license had been suspended for three months for "false license plates" and lack of insurance, that Richardson was aware that Obermiller's driver's license had been suspended, and that Obermiller had worked for multiple police agencies over a six-year span.  [DE 1 at 13, 15, 16, 17, 18.]  Richardson contends that Silich does not "allege Defendant Richardson was aware of any prior behavior of Defendant Obermiller's that involved false arrests or propensity to commit false arrests," and that district courts "routinely dismiss" failure to train or supervise claims presenting similar circumstances.  [DE 26 at 4.]

Although Silich paints an unflattering portrait of Obermiller's past behavior and perhaps even of his character, the allegations would not support a determination that Richardson knew that Obermiller was likely to engage in constitutional violations of the types alleged here.  A propensity to violate an arrestee's Fourth Amendment rights is not shown by the types of sketchy incidents Silich alleges involving motor vehicles and even, without more, a spotty employment record with other police agencies.  The "deliberate indifference" standard of *City of Canton* requires "a high degree of culpability on the part of the policymaker." *Cornfield by Lewis v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993).  The Seventh Circuit has described the standard as "a requirement that liability be based on a finding that the policymakers have actual or constructive notice that a particular omission [of training or supervision]

is likely to result in constitutional violations."  *Id.* at 1327.  *See also Williams v. Canrecci*,

Cause No. 3:11-CV-47, 2011 WL 2462029, at *6 (N.D.Ind.  June 17, 2011).

Silich responds to Richardson's argument with: "[t]he defendant police chief was

an experienced cop at the time of the traffic stop; therefore, he had to know that his

failure to train was likely to lead to constitutional violations."  [DE 20 at 6.]  This

reasoning does not hold up.  The pleading of Richardson's knowledge is not sufficient

to support a claim for failure to train or supervise Obermiller, or for retention of

Obermiller, because what Richardson knew did not suggest it was likely that

Obermiller would violate arrestees' Fourth Amendment rights.  The motion to dismiss

Count IV will be granted.

### Count V – Lake Station's Negligent Supervision, Training and Retention of Officer Obermiller

The factual allegations of Count V are similar to those underlying Count IV

concerning the failure to train and supervise Officer Obermiller and his retention as a

police officer.  But this time the allegations are directed to the City of Lake Station and

Count V is brought as a claim of negligence under Indiana law.  Silich maintains that

Lake Station "knew or should have known" that Obermiller was "unfit and

unqualified" to be a police officer, but that Lake Station negligently hired, supervised,

trained and retained Obermiller, later resulting in harm to Silich.  [DE 1 at 20.]

The Indiana Supreme Court addressed negligent hiring claims under Indiana

law in *Sedam v. 2JR Pizza Enterprises, LLC*, 84 N.E.3d 1174 (Ind. 2017), and found that

such a claim is incompatible with a claim that seeks recovery against the employer for

the same act of the employee on a *respondeat superior* theory.  The Court held that "there is a line of Indiana precedent spanning nearly five decades holding that an employer's admission that an employee was acting within the course and scope of his employment precludes negligent hiring claims."  *Id*. at 1178.  "Such an admission exposes an employer to liability for any and all fault assessed to the employee's negligence, and thus a negligent hiring claim becomes duplicative since a plaintiff may not recover twice for the same damage."  *Id*.  Lake Station argues that Count V fails to state a claim under Indiana law because the complaint alleges that Obermiller was acting within the scope of his employment.  [DE 17 at 8-9, citing DE 1 at 20.]

Silich alleges in Count V that "[a]t all material times relevant to this Complaint, Defendant Obermiller was acting under the direction and control of Defendant Lake Station and its police chief (Richardson)."  [DE 1 at 20.]  But this is an allegation by Silich that Lake Station has not yet admitted or denied since it has filed a motion to dismiss in lieu of an answer.  *Sedam* speaks of an employer's *admission*, not a plaintiff's *assertion*.  Even in the briefs in which it invokes *Sedam*, Lake Station does not admit that Obermiller was acting within the scope of his employment as a Lake Station police officer, and therefore does not benefit from the holding of *Sedam*.  Because Lake Station has not admitted that Obermiller's conduct was within the scope of his employment with the police department, the City does not demonstrate that the *Sedam* case entitles it to dismissal of Silich's negligent supervision, training and retention claim in Count V.

12

In addition, courts in Indiana, while discussing the fact that negligent hiring or retention is a separate cause of action from respondeat superior, have recognized that "[w]here the issue of respondeat superior has not been admitted, a 'plaintiff could theoretically plead both theories of liability in the alternative.'" *Davis v. Macey*, 901 F.Supp.2d 1107, 1111 (N.D.Ind. 2012), citing *Clark v. Avis, Inc.*, 890 N.E.2d 760, 765 (Ind.Ct.App. 2008). So at this stage of the case, Lake Station's argument does not preclude Silich from proceeding with alternative claims even if in the final analysis Silich cannot recover on all of them. The motion to dismiss will be denied as to Count V.

### Count VI – Battery, Assault & False Imprisonment Under Indiana Law

Silich alleges in Count VI that all the defendants are liable under Indiana tort law for battery, assault and false imprisonment. Under Indiana law, personal liability of an individual employee of a government entity would require Silich to "allege that an act or omission of the employee that cause[d] [Silich's] loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (4) calculated to benefit the employee personally." Ind. Code §34-13-3-5(c). The Lake Station defendants argue that no tort claim is stated against Chief Richardson or Officer Obermiller in their personal capacities because the complaint "does not plead any of the simple statutory factors necessary to bring a claim against an employee of a public entity." [DE 17 at 9-10.][2] The Hobart Township defendants make a similar

---

[2]   The motion does not address the tort claims as asserted against the city of Lake Station, so those claims are unaffected.

13

argument, noting that the complaint does not allege that Williams' or Clemmons' conduct met any of the requirements of §34-13-3-5(c). [DE 24 at 8-9.]

In response, Silich does not cite to any allegations within the complaint that meet the requirements of Ind. Code §34-13-3-5(c)(1)-(4). Instead, Silich acknowledges that he "asserts that the course of conduct undertaken by [the individual defendants] flows from a course of conduct that is not independent of [the] activities that serve the employer (Lake Station)." [DE 20 at 7; DE 25 at 8.] "Not independent" means "dependent." So Silich characterizes his own theory of the case as including that Richardson's, Obermiller's, Clemmons' and Williams' actions were taken in service to their employer. That is quite to the contrary of the statutory element that the individual defendants' acts were "clearly outside the scope of [their] employment." Silich makes it even more plain: "Plaintiff Silich avers that the individual defendants did act within the scope of their employment." [DE 20 at 9; DE 25 at 9.] But Silich also now argues that he "pleads in the alternative that the officers acted outside of their scope of employment." [*Id.*]

To the contrary, Silich has not in fact *pleaded* any such thing, and his assertion in response to the motion does not cite his complaint for any such allegations. Instead, Silich "offers additional averments" in his opposition brief – that the alleged conduct of the individual defendants "could be construed as criminal activity," that it "did involve conduct outside the scope of employment" and "was malicious, willful, and wanton." [DE 20 at 9-10; DE 25 at 10..] Silich maintains that these additional assertions are

14

consistent with the existing averments and so can be considered for purposes of the motion to dismiss, citing *Help at Home Inc. v. Medical Capital, L.L.C.*, 260 F.3d 748, 752-53 (7th Cir. 2001) (a plaintiff may "add [essential facts] by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint"). [DE 20 at 9; DE 25 at 10.]

Although this might generally be true, here we consider a claim for which the applicable statute expressly requires that certain allegations be made in the complaint, which also "must contain a reasonable factual basis supporting the allegations." Ind. Code §34-13-3-5(c). In this context, given the particularity required by the statute, I find that the pleading of Count VI is insufficient to support tort claims against defendants Richardson, Obermiller, Clemmons or Williams. My decision is made easier because Silich will have an opportunity to re-plead Count VI under the Seventh Circuit's general rule that after a dismissal under Rule 12(b)(6), a plaintiff is given at least one opportunity to amend the pleading. *Runnion*, 786 F.3d at 519. Count VI will be dismissed without prejudice as against all the individual defendants.

## Count VII – Trespass by Defendant Obermiller

Silich alleges in Count VII that defendant Obermiller committed a trespass under Indiana law by his entry onto Silich's private property to effectuate the seizure of Silich. [DE 1 at 22-23.] The Lake Station defendants' motion to dismiss treats Count VII together with Count VI, offering the same argument for the dismissal of each, namely that Silich's complaint lacks any of the allegations required by Ind. Code §34-13-3-5(c)

15

and asserts that Obermiller acted within (not "clearly outside") the scope of his employment.  Neither does Silich offer any different argument with respect to Count VII, the word "trespass" not appearing in his brief.  [DE 20.]  So the motion with respect to Count VII will have the same result as Count VI, which will be dismissed without prejudice.

### Count VIII – Stigma-Plus

A procedural due process claim generally requires the deprivation of a constitutionally protected property or liberty interest, and then consideration of what process is due.  *McMahon v. Kindlarski*, 512 F.3d 983, 987-88 (7th Cir. 2008).  Because mere defamation "does not deprive a person of liberty protected by the Fourteenth Amendment...even when the defamation causes serious impairment of future employment opportunities," a defamation-based procedural due process claim requires "stigma-plus."  *Id.*  This concept is a reference to claims that involve harm to a plaintiff's "'good name, reputation, honor or integrity' in a way that made it 'virtually impossible for the employee to find new employment in his chosen field.'"  *McMahon*, 512 F.3d at 988, quoting *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001).  Silich's Count VIII contains language parroting this standard:  "Plaintiff's 'good name, reputation, honor and integrity [were] called into question in a manner that makes it virtually impossible' for the Plaintiff to be re-elected to office and or to be hired for a job for which an arrest is an impediment to employment."  [DE 1 at 24, ¶3.]

16

But the Seventh Circuit has subsequently made clear that even in the dire employment circumstances described in *McMahon* and *Townsend*, more is required to succeed on a stigma-plus claim, specifically the distinct alteration or extinguishment of a right or status previously recognized by state law.  *Hinkle v. White*, 793 F.3d 764, (7th Cir. 2015), citing *Paul v. Davis*, 424 U.S. 693, 711 (1976).  Examples of this loss of rights or status include the addition of a plaintiff's name to a list that legally disqualified him from purchasing alcoholic beverages in *Wisconsin v. Constantineau*, 400 U.S. 433 (1971); suspension of the ability to operate a day care center in *Doyle v. Camelot Care Centers*, 305 F.3d 603, 617 (7th Cir. 2002); and an academic suspension, expulsion from the Navy ROTC program, and loss of scholarship in *Doe v. Purdue University*, 928 F.3d 652, 662-3 (7th Cir. 2019).

The Hobart Township defendants argue that Silich states no stigma-plus claim because he "fails to allege a change in legal status sufficient to state a claim of deprivation of occupational liberty."  [DE 24 at 10.]   Count VII does not allege any change in Silich's legal status.  Because Silich alleges no loss of a legally-recognized right or status he previously held, he fails to state a stigma-plus claim.  I also note that stigma-plus is a procedural due process concept, not a substantive due process argument, and Count VIII contains no allegations about inadequate procedure or process that preceded the disclosure of or damage from the stigmatizing information. *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 502 (6th Cir. 2007), citing *Paul v. Davis*, 424

U.S. 693, 710 n.5 (1976).  For these reasons, Count VIII will be dismissed for failure to state a claim.

Because Silich will be given the opportunity to re-plead his stigma-plus claim, I address other arguments made against Count VIII.  The Lake Station defendants contend that Count VIII fails to state a claim because statements are not actionable when the disclosure "is protected by privilege."  [DE 17 at 11, citing *Austin v. Marion County Housing Authority*, No. 3:17-cv-00005-DRH-SCW, 2017 WL 2533521, at *6 (S.D.Ill. June 12, 2017).]  "Indiana law has long recognized an absolute privilege that protects all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements."  *Eckerle v. Katz & Korin, P.C.*, 81 N.E.3d 272, 278 (Ind.Ct.App. 2017).  Because Silich identifies the stigmatizing statements as made in "police reports and in court filings," the Lake Station defendants argue that no procedural due process claim can be based on the statements.  [DE 17 at 11.]  The argument has superficial appeal, but the movants do not provide adequate reasoning or authority to support the critical leap from state law contexts to federal stigma-plus due process liability under §1983.

*Eckerle* is a case about defamation torts under Indiana law, and does not address the law of "stigma-plus" due process claims.  Silich cites *Austin* as addressing the interplay of state law privileges and stigma-plus due process claims based on defamation. The *Austin* decision does not hold, and cites no authority holding, that a state law privilege defeats a stigma-plus due process claim.  There the U.S. District

Court for the Southern District of Illinois discusses state law privileges against a defamation claim, but ultimately decides that because the challenged statements were legally required to be disclosed pursuant to a state Freedom of Information Act request, the plaintiff's due process claim failed because she could not demonstrate that the defendants' (non-voluntary) conduct caused the injury to her reputation. *Austin*, 2017 WL 2533521, at *6.

In their reply, the Lake Station defendants cite more cases to support the principle their argument requires—that statements made in police reports and court filings cannot provide the basis for a stigma-plus due process claim. *In re Bryant*, 4:16-CV-243-HLM-WEJ, 2017 WL 11518399, at * (N.D.Ga. Aug. 31, 2017), holds that "state law enforcement officials testifying in judicial proceedings are absolutely immune from liability under §1983," citing *Broscoe v. LaHue*, 460 U.S. 325 (1983). In that 1983 decision, the Supreme Court considered whether "§1983 authorizes a convicted person to assert a claim for damages against a police officer for giving perjured testimony at his criminal trial." *Broscoe*, 460 U.S. at 326. The Supreme Court agreed with the Seventh Circuit that witnesses, including government officials, "are absolutely immune from damages liability based on their testimony." *Id*. The rationale was based on the characteristics of the judicial process and the need to assure that all participants – judges, advocates, and witnesses – could perform their roles without fear of civil damages liability. *Id*. at 335-336. The Lake Station defendants offer no analysis demonstrating that the same rationale extends to a police officer's statements in a police report or probable cause

19

affidavit.  The burden is obviously on the movant to demonstrate that a claim fails to demonstrate a plausible basis for relief, but here the Lake Station defendants' overly glib and conclusory assertion of their theory for dismissal doesn't meet that standard.

The other authorities relied on are no more persuasive.  The cited portion of *Dolcine v. Hanson*, 17-CV-4835 (VEC), 2021 WL 94978, at *4 (S.D.N.Y.  Mar. 12, 2021), does not, as defendants broadly suggest, "recogniz[e] defendants to be immune from stigma-plus liability for statements in connection with court proceedings." [DE 26 at 8.] Instead, the *Dolcine* court finds the arguments on immunity to be "muddled," and that it was "ultimately...unnecessary to wade into the immunity thicket" because the plaintiff was unable to demonstrate that "his due process rights were violated by anything Defendants said."  *Dolcine*, 2021 WL 94978, at *4.

Finally, the district court in *Kennedy v. Caruso*, No. 3:19-cv-260(VLB), 2021 WL 5415262, at *14 (D.Conn.  Nov. 19, 2021), found that statements made to a Family Court were "not actionable" on a stigma-plus claim because the defendant was "entitled to absolute immunity for statements made to the Family Court in her role as the [guardian ad item]."   No reasoning or authority is offered, and the court refers only to its prior decision on a motion to dismiss, which the Lake Station defendants have not cited or made available.  In any event, the context is not analogous to the present cause because in-court statements made in an adversarial context may present an analysis distinct from probable cause affidavits and police reports.  The Hobart Township defendants' treatment of the same argument, citing a single case that does not support the broad

proposition they claim, is as insufficient as the Lake Station defendants' has been. [DE 24 at 10.]  The defendants do not provide adequate legal authority to demonstrate persuasively that a stigma plus claim cannot be based on statements of the kind alleged by Silich.

The Hobart Township defendants make one additional challenge to Silich's stigma-plus claim.  They argue that their contacts with law enforcement requesting that there be an investigation of Silich are qualifiedly privileged and cannot support the publication prong of a stigma-plus claim.  [DE 24 at 10.]  In contrast to Chief Richardson and Officer Obermiller, Clemmons and Williams suggest that they stand in the position of citizen-complainants, not law enforcement.  But the complaint's allegations, accepted as true for purposes of the current motion, are that Clemmons and Williams did not act as honest citizens reporting activity sincerely believed to be criminal, but instead that they "conspired to fabricate false claims against the Plaintiff" and to "cause the false arrest of Plaintiff," by engaging Police Chief Richardson "to assist in this endeavor." [DE 1 at 5, ¶¶10,  11, 12.]  Even assuming without deciding that state law privileges apply in the §1983 stigma-plus context, the allegations against the Hobart Township defendants would disqualify them from the public interest privilege they invoke, because they were not acting in good faith and not seeking a legitimate law enforcement investigation.  *Kelley v. Tanoos*, 865 N.E.2d 593, 600 (Ind. 2007).

### Summary

The motions to dismiss will be denied as to Counts I and II, the claims under the First and Fourth Amendments. Count III alleging a conspiracy actionable under §1985 will be dismissed with prejudice in light of Silich's request for voluntary dismissal. Count IV, a claim only against defendant Richardson for failure to supervise and train Officer Obermiller and for retaining him, will be dismissed without prejudice, but Count V, the negligence claim against Lake Station based on the same theories will not. The tort claims in Count VI will be dismissed as against the individual defendants, as will the trespass claim in Count VII against Officer Obermiller only. Finally, the stigma plus claim in Count VIII will be dismissed. For the reasons explained in this opinion, the claims dismissed without prejudice fail to state a claim upon which relief may be granted, but Silich will be granted leave to file a First Amended Complaint in which he attempts to re-plead any of those claims to correct the errors I have identified.

**ACCORDINGLY:**

The Partial Motion to Dismiss filed by defendants Brandon Obermiller, James Wesley Richardson, III, and City of Lake Station [DE 16] is DENIED as to Counts I, II, and V. The motion is GRANTED as to Counts III, IV, VI as against the individual defendants, VII, and VIII.

The Motion to Dismiss filed by defendants Joseph D. Clemmons and Fred Paul Williams [DE 23] is DENIED as to Counts I and II, and is GRANTED as to Counts III, VI, and VIII.

Plaintiff Thomas David Silich's request to voluntarily dismiss Count III of his complaint [DE 20 at ¶1; DE 25 at ¶3] is GRANTED, and Count III is DISMISSED WITH PREJUDICE.

Plaintiff Silich is granted 30 days in which to file a First Amended Complaint for the purpose of attempting to correct errors within any of the claims here dismissed without prejudice.

**SO ORDERED.**

ENTERED:  May 15, 2023.                     /s/ Philip P. Simon
                                            United States District Judge